Michael D. Flynn, Jr., Esq.
**MAHER · YANZA · FLYNN · TIMBLIN, LLP**
115 Hesler Place, Ground Floor
Governor Joseph Flores Building
Hagåtña, Guam 96910
Telephone No.: (671) 477-7059
Facsimile No.: (671) 472-5487

Attorneys for HAYAO SUEHIRO

**FILED**

DISTRICT COURT OF GUAM

JUN 26 2007

MARY L.M. MORAN
CLERK OF COURT

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF GUAM  07-00017

| | |
|---|---|
| HAYAO SUEHIRO,<br><br>                    Plaintiff,<br><br>          vs.<br><br>ROBERT J. DEL ROSARIO and MELANIE DEL ROSARIO,<br><br>                    Defendants. | CIVIL CASE NO. CIV_____<br><br>**COMPLAINT ON PROMISSORY NOTE AND APPLICATION FOR PRELIMINARY INJUNCTION** |

The above-named Plaintiff, Hayao Suehiro, through his attorneys, MAHER ·

YANZA · FLYNN · TIMBLIN, LLP, by Michael D. Flynn, Jr., Esq., on personal

knowledge as to matters in which he was directly involved, and on information and

belief as to all other matters, files this Complaint on Promissory Note and Application

for Preliminary Injunction, stating, as follows:

## JURISDICTION

1.     At all times material hereto, Plaintiff Hayao Suehiro (hereinafter,

"Suehiro") was and is a citizen and resident of Japan.

ORIGINAL

1    2.    At all times material hereto, Defendants Robert Del Rosario and Melanie

2    Del Rosario (hereinafter, collectively, the "Del Rosarios") were and are citizens of the

3    United States of America and residents of Guam.

4        3.    This Court has personal jurisdiction over Suehiro.

5        4.    This Court has personal jurisdiction over the Del Rosarios.

6        5.    The amount in controversy on Suehiro's Complaint, exclusive of interest

7    and costs, exceeds $75,000.00.

8        6.    This Court has subject matter jurisdiction of Suehiro's Complaint, on the

9    basis of diversity, pursuant to 28 U.S.C. §1332, saving to Suehiro all other remedies to

10   which he is otherwise entitled.

11
## GENERAL ALLEGATIONS
12
13       7.    On or about January 9, 2002, Defendant Robert Del Rosario (hereinafter,

     "Del Rosario") agreed to pay back Suehiro the sum of $100,000.00 for debt that was
14
     owed Suehiro. A true and correct copy of Robert Del Rosario's January 9, 2002 letter,
15
     addressed to Suehiro, evidencing said debt, is attached hereto, as Exhibit "1", and
16
     incorporated herein.
17
18       8.    On February 18, 2003, in Hagåtña, Guam, for value received, Del

     Rosario made, executed and delivered to Suehiro, as payee, a promissory note in
19
     writing, whereby Del Rosario promised to pay to Suehiro or his order, on February 18,
20
     2005, the sum of One Hundred Thousand Dollars ($100,000.00), with interest thereon
21
     at the rate of one percent (1%) per month, compounded monthly, from February 18,
22
     2003 until payment of principal and interest in full (the "Promissory Note"). A true and
23
     correct copy of the Promissory Note is attached hereto, as Exhibit "2", and
24
     incorporated herein.
25
         9.    To secure the indebtedness evidenced by the Promissory Note, Del

     Rosario, on February 18, 2003, in Hagåtña, Guam, executed and delivered to Suehiro,

2

1 a written security agreement (the "Security Agreement") granting and conveying to
2 Suehiro a security interest in and to the proceeds of settlement, compromise or
3 judgment (hereinafter the "Proceeds") from Del Rosario's claims and damages for
4 bodily injury against Japan Airlines Co., Ltd. (hereinafter, "JAL") and any other person
5 who contributed to the cause of Robert Del Rosario's bodily injury to his lower limbs
6 on a JAL aircraft. A true and correct copy of the Security Agreement is attached
7 hereto, as Exhibit "3", and incorporated herein.

8     10. On April 13, 2007, Suehiro perfected his security interest by filing a
9 financing statement (to which a true and correct copy of the Security Agreement was
10 attached) with the Commissioner of Banking & Insurance, Department of Revenue and
11 Taxation, Government of Guam (the "Financing Statement"). A true and correct copy
12 of the Financing Statement is attached hereto, as Exhibit "4", and incorporated herein.

13     11. The Del Rosarios, as plaintiffs, filed a complaint in the United States
14 District Court, District of Guam, Civil Case No. CIV04-00028, on June 8, 2004, against
15 JAL, asserting a claim in negligence and for loss of consortium, stemming from alleged
16 bodily injury to Robert Del Rosario, on a JAL aircraft (hereinafter, the "Negligence
17 Action").

18     12. JAL denied plaintiffs' claims of negligence and loss of consortium.

19     13. On August 8, 2006, the Court, in an August 9, 2006 filed Findings of Fact
20 and Conclusions of Law, concluded that "on February 24, 2006, the parties entered
21 into a binding contract to settle [the Negligence Action] for $175,000.00."

22     14. On the same date, the Court ordered JAL to pay the settlement money of
23 $175,000.00, in the Negligence Action, to the Clerk of Court for the District Court of
24 Guam, pending disposition of Robert Del Rosario's appeal of the Court's Order, in the
25 Negligence Action, to the United States Court of Appeals for the Ninth Circuit. A true

3

and correct copy of the Court's Order is attached hereto, as Exhibit "5", and incorporated herein.

15.     On August 18, 2006, Robert Del Rosario filed a Notice of Appeal with the Court, in the Negligence Action. The appeal has not yet been decided.

## COUNT I – BREACH OF PROMISSORY NOTE BY ROBERT DEL ROSARIO

16.     Suehiro incorporates by reference the allegations stated above in paragraphs 1 to 15.

17.     Full payment of principal and interest under the Promissory Note became due and payable to Suehiro on February 18, 2005.

18.     Robert Del Rosario has not paid Suehiro any amount of principal, and has not paid any amount of interest, due and owing on the Promissory Note.

19.     Under the terms of the Promissory Note, as of May 18, 2007, Robert Del Rosario owes Suehiro at least $164,463.16.

20.     Under the terms of the Promissory Note and the Security Agreement, a letter providing notice of delinquency and default and demanding full and immediate payment, was sent to Robert Del Rosario, via certified U.S. mail, on May 4, 2007. A true and correct copy of the Notice of Delinquency and Default is attached hereto, as Exhibit "6", and incorporated herein.

21.     Under the terms of the Promissory Note, upon ten (10) days following Robert Del Rosario's receipt of the notice of default, principal and interest due and owing on the Promissory Note, thereafter, bears interest at the rate of two percent (2%) per month, compounded monthly.

22.     The Promissory Note has been declared in default and is immediately due and payable.

23.     Under the terms of the Promissory Note and Security Agreement, Robert Del Rosario agreed to pay all costs and expenses incurred by Suehiro, including all

4

1  reasonable attorney's fees, in connection with collection of the Promissory Note, debt
2  under the Promissory Note, and the enforcement of Suehiro's rights under the
3  Promissory Note and the Security Agreement.

4  24.  Robert Del Rosario has defaulted in his obligations under the Promissory
5  Note, materially breaching its terms. Said breaches of the Promissory Note are the
6  proximate cause of harm, losses and damages sustained by Suehiro, as will be
7  established at trial.

## COUNT II – BREACH OF SECURITY AGREEMENT BY ROBERT DEL ROSARIO

9
10  25.  Suehiro incorporates by reference the allegations stated above in
   paragraphs 1 to 24.
11

12  26.  Robert Del Rosario has defaulted in his obligations under the Security
13  Agreement, materially breaching its terms. Said breaches of the Security Agreement
14  are the proximate cause of harm, losses and damages sustained by Suehiro, as will
   be established at trial.
15

16  ## COUNT III – COMMUNITY DEBT OF ROBERT AND MELANIE DEL ROSARIO

17  27.  Suehiro incorporates by reference the allegations stated above in
18  paragraphs 1 to 26.

19  28.  All amounts due and owing under the Promissory Note and Security
20  Agreement constitute community property debt for which debt Defendant Robert Del
21  Rosario and Defendant Melanie Del Rosario are jointly and severally liable.

22  29.  Robert Del Rosario's breaches of the Promissory Note and the Security
23  Agreement are the proximate cause of harm, losses and damages sustained by
24  Suehiro, as will be established at trial.  Under community property law, Defendant
25  Robert Del Rosario and Defendant Melanie Del Rosario are jointly and severally liable
   for said harm, losses and damages sustained by Suehiro.

5

## COUNT IV – APPLICATION FOR PRELIMINARY INJUNCTION

30.   Suehiro incorporates by reference the allegations stated above in paragraphs 1 to 29.

31.   Under the terms of the Security Agreement, if Robert Del Rosario's appeal proves unsuccessful, Suehiro will automatically and immediately possess a secured interest in the $175,000.00 that JAL has deposited with the Clerk of Court, in Civil Case No. CIV04-00028, District Court of Guam, which interest is paramount to the interest of any other person or entity (including the Del Rosarios).

32.   Robert Del Rosario owes debt to Suehiro, under the Promissory Note and Security Agreement, in an amount that constitutes the bulk of, if not more than, the $175,000 deposited with the Clerk of Court.

33.   Robert Del Rosario was obligated to begin making payments of interest, under the Promissory Note, as early as February 18, 2004, but he has never made any payment of interest or principal under the Promissory Note and, therefore, in all probability, it is substantially likely that he would dispose of any part of the deposited $175,000 he might receive from the Clerk of Court without fulfilling his obligations under the Promissory Note, thereby causing further harm to Suehiro and eviscerating Suehiro's secured interest in the $175,000 deposit.

34.   Suehiro faces the threat of immediate and irreparable harm if the Clerk of Court disburses any amount of the $175,000.00 to Robert Del Rosario or Melanie Del Rosario, because, assuming the Del Rosarios dispose of the money, Suehiro will then possess no means to satisfy his rights under the Promissory Note and the Security Agreement.

35.   Suehiro has no adequate remedy at law if the Clerk of Court is allowed to disburse any amount of the $175,000.00 to Robert Del Rosario or Melanie Del Rosario.

1    36.    Suehiro has a substantial likelihood of success on the merits of his
2    breach of contract causes of action and the balance of equities weighs heavily in
3    Suehiro's favor.

4    37.    Suehiro is entitled to a preliminary injunction, enjoining the Clerk of Court
5    from disbursing to Robert Del Rosario or Melanie Del Rosario any of the $175,000
6    deposited with the Clerk of Court, by JAL, in District Court of Guam, Civil Case No.
7    CIV04-00028, until resolution of Suehiro's claims against the Del Rosarios.

8    38.    No security should be required of Suehiro, under FRCP 65(c), as the
9    $175,000 at issue is deposited with the Clerk of Court and, at present, the $175,000
10   can only be accessed or disposed of following resolution of Robert Del Rosario's
11   appeal.

12

13   **WHEREFORE**, Plaintiff Hayao Suehiro requests this Honorable Court as
14   follows:

15   1.    To decree that a preliminary injunction and/or a permanent injunction
16   shall issue, enjoining the Clerk of Court from disbursing to Robert Del Rosario or
17   Melanie Del Rosario any of the $175,000 deposited with the Clerk of Court, by JAL, in
18   District Court of Guam, Civil Case No. CIV04-00028, until resolution of Suehiro's
19   claims, under the Promissory Note and Security Agreement, against the Del Rosarios;

20   2.    To decree that no security shall be required of Plaintiff Hayao Suehiro
21   under FRCP 65(c);

22   3.    To decree that, upon conclusion of the appeal in JAL's favor, Hayao
23   Suehiro has a first and prior security interest in the above-described $175,000 in JAL
24   settlement proceeds, paramount to all other persons and entities;

25

4.   To decree that Hayao Suehiro be entitled to a first and valid lien in the above-described $175,000 in settlement proceeds, paramount to all other persons and entities;

5.   To decree that Robert Del Rosario is in default under, and has materially breached, the terms of the Promissory Note and the Security Agreement and that Hayao Suehiro is entitled to damages, in an amount to be determined, according to proof at the time of trial, for said default and breaches.

6.   To decree that the above-described $175,000 in settlement proceeds, be paid and applied to satisfy Robert Del Rosario's indebtedness to Hayao Suehiro;

7.   To decree that in the event the proceeds of the JAL settlement are insufficient to satisfy Robert Del Rosario's debt, plus interest, costs, and reasonable attorney's fees, that Suehiro be granted a judgment against Robert Del Rosario and Melanie Del Rosario, jointly and severally, for any such deficiency;

8.   To award Hayao Suehiro reasonable attorney's fees and costs of suit; and,

9.   To grant Hayao Suehiro such other and further relief as the Court deems appropriate and proper.

Respectfully submitted this 26th day of June, 2007.

**MAHER • YANZA • FLYNN • TIMBLIN, LLP**
Attorneys for **HAYAO SUEHIRO**

By:   _____
**MICHAEL D. FLYNN, JR., ESQ.**

January 9, 2002

Mr. Hayao Suehiro
President
KLS Co. Ltd., Guam U.S.A.
Yokohama, Japan

Re: KLS Guam operations

Dear Mr. Suehiro:

    This report refers to all operations in Guam and our advances in cash to you. Included also are our personal agreements in connection to my Japan Airlines claims.

    First of all, and in my opinion, the amount of $ 30,000 Pete Agravante and I took from you as a loan for TPO Guam Inc. for attorneys fees (David Lujan services) should be included in the total of our advances, therefore my list are as follows:

   I.   TPO Guam, Inc. for Attorney David Lujan Services:

        July 1994                        $   30,000

  II.   Kls Co. Ltd., Guam U.S.A.:

        May  17, 2002       ¥ 90,000
        May  28, 2002       ¥100,000
        May  29, 2002       ¥150,000
        June 18, 2002       ¥100,000
        Aug.     2002       ¥2,000,000
        Aug. 28, 2002       ¥100,000
        Sept. 10, 2002                   $   15,000
        Nov.  21, 2002                   $    5,200

 III.   Sept. 12, 2002 for TCD           $   50,000

        Total in Yen 2,540,000           $  100,000

Any differences in the amounts between our records shall be reconciled and finalized as to the agreed amount. I will agree to put this in writing and I will pledge to provide this amount from my claim from Japan Airline to KLS Co., Guam U.S.A. as group initial investment to continue the company.

Chronology of other events.

On December 8, 2002, typhoon Pongsona hit Guam, I was busy attending to my claims with FEMA (Federal Emergency Management Assistance), Food Stamp and Red Cross. The situation and assistance is an opportunity for Guam residents.

On December 16, 2002, you call me up at 19:30 p.m., we have talked about what we had agreed in our conversation on November 21, 2002. I understand and I still agree to what we have agreed upon on this day.

Exhibit

1

page 2.

On the same day, I was advised by Tom Clarke to see him
personally, but I told him, it was impossible due to
several reasons, gasoline was scarce, there was a long
line, and no water and electrity.  I was worried about
my family's well-being at that time.

On December 23, 2002, I had a doctor's appointment with
Dr. Bollinger for my fractured foot, knee (left & right) and
my ankle.  He told me to be careful and not to stand on two
legs for a long time.  It will cause pain and fatigue on
my two legs.  Also, I cannot jog anymore.  He recommended
surgeries on my knee, ankle and my foot.  But before doing
these, I will have to go through MRI or Magnetic Resonance
Imaging and this procedure will cost me $ 1,300.00.
                                                        Care
He already sent (Dr. Bollinger) his request to Pacific/Insurance
for coverage.  If Pacific Care will not cover it, My lawyer,
Atty. Gayyas will request the coverage of the operation
and MRI costs with Japan Airlines.

## My future needs:

1. Financial  support for medical expenses, such as surgical
   procedure and medical expenses.

2. Advance for daily expenses- After the surgeries I expected
   not to work for two months.

## Objective of financial support

Without your financial support, I cannot have surgical procedures,
doctors certifications and medical expense that are very vital
as evidence of my case and my claim.  And mostly, it will cover
a longer time to file the claim with Japan Airlines.

## Necessity of a Written Agreement

A written Agreement will drawn by me to guarantee that as soon
as I received the claim from Japan Airline, I will put up
an amount comparable to what you have invested in KLS Co. Ltd.,
Guam USA for continuance of the company in the future. This
amount should be agreed upon between Mr. Suehiro and me. This
is also base on our November 21, 2002 at Kawasaki Hotel,
Agreement.

I also would like to request that an Agreement will be drawn
in the same content in Japan at the U.S. Embassy to further
strengthen the future of/company.  And this Agreement will be
notarized.

Should you have any questions, please feel free to contact me
at home in Guam.

Sincerely,

Bobby

## PROMISSORY NOTE

$100,000.00

Hagåtña, Guam

February _5_, 2003

FOR VALUE RECEIVED, Robert J. Del Rosario, whose Social Security Number is
_5Ʒꟼ꞉꞉꞉GꞌG-ꞌ꞉Ƌ꞉9RꞋꞌ_ and whose mailing address is 110 Calamendo Loop, Liguan Terrace,
Dededo, Guam 96929 (the "Maker"), promises to pay to the order of Hayao Suehiro, whose address
is Sankyo Seisakusho Co., Ltd., Tsuzuki-ku, Ikebe-cho 3290, Yokohama City, Japan 224-0053, the
sum of One Hundred Thousand dollars ($100,000.00)(the "principal amount") together with interest
thereon as provided herein.

The unpaid principal balance of this Note shall bear interest at the rate of one (1%) percent
per month, compounded monthly. Monthly payments of interest only in the amount of One Thousand
Dollars ($1,000.00) shall be due and payable, in advance, on each one-month anniversary of the date
first set forth above. The first such payment shall be due and payable upon the twelfth (12th) month
anniversary of the date first set forth above and payments shall continue thereafter for the next eleven
(11) months. On the twenty-fourth (24th) month anniversary of the date first set forth above, the entire
principal balance of this Note, together with all accrued interest and any other charges properly due
hereunder, shall be due and payable in full.

The amount of any delinquent payment of principal and/or interest (i.e., not paid within ten (10)
days of notice) shall bear interest at the rate of two (2%) percent per month, compounded monthly,
from the date due to the date payment is made, and in the event that the holders exercise their right to
accelerate this Note as provided herein, upon default, then the amount so accelerated shall bear
interest at the rate of two (2%) percent per month, compounded monthly, from the date of notice of
such acceleration to the date payment is made. This Note shall be prepayable in whole or in part at
any time or times.

**Exhibit**

**2**

The Maker also agrees to pay all costs and expenses incurred by the holders hereof, including all reasonable attorneys' fees, in connection with the collection of this Note and the indebtedness evidenced hereby, or the enforcement of the holders' rights hereunder.

At the option of the holders, the entire principal balance of this Note, together with accrued interest thereon, shall become immediately due and payable without further notice or demand, and notwithstanding any prior waiver of any breach or default or other indulgence, upon the occurrence at any time of any one or more of the following events: (i) default in making any payment of principal or interest, but only if such default continues for ten (10) days after written notice thereof is sent by post paid certified mail to the Maker; (ii) execution of a trust mortgage, insolvency, appointment of a receiver for any part of the property of, assignment for the benefit of creditors by, or the filing of a petition in bankruptcy by, or the filing of a petition in bankruptcy or the commencement of any proceedings under any bankruptcy or insolvency laws or any laws relating to the relief of debtors, readjustment of indebtedness, composition or extension by or against the Maker; or upon the dissolution or termination of the Maker.

The Maker hereby: (a) waives presentment, demand, protest, suretyship defenses and defenses in the nature thereof; (b) waives any defenses based upon and specifically assents to any and all extensions and postponements of the time for payment, changes in terms and conditions and all other indulgences and forebearances which may be granted by the holders to any party now or hereafter liable hereunder; and (c) agrees to be bound by all of the terms contained in this Note.

No delay or omission on the part of the holders in exercising any right hereunder shall operate as a waiver of such right, or of any other right of such holders, nor shall any delay, omission or waiver on any one occasion be deemed to be a bar to, or waiver of, the same or of any other right on any future occasion.

Payment of this Note and the performance of its provisions are secured by a security

agreement executed concurrently herewith by the Maker for the security of the holders.

Executed as a sealed instrument effective the day first set forth above.

**ROBERT J. DEL ROSARIO**

GUAM              )
                   ) ss:
CITY OF HAGÅTÑA    )

On this ___ day of February, 2003, before me a Notary Public in and for Guam, personally appeared ROBERT J. DEL ROSARIO, known to me to be the person whose name is subscribed to in the foregoing instrument and acknowledged to me that he executed the same as his own free act and deed for the uses and purposes therein set forth.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

Notary Public

NORMALOU G. MANIBUSAN
NOTARY PUBLIC
In and for Guam, U.S.A.
My Commission Expires: Aug. 8, 2004
P.O. Box 20248, GMF, Guam 96921

) SEAL (

# SECURITY AGREEMENT

      This Security Agreement is made this 18th of February, 2003, by and between ROBERT J. DEL ROSARIO, whose mailing address is 110 Calamendo Loop, Liguan Terrace, Dededo, Guam 96929 (hereinafter referred to as the "Debtor"); and Hayao Suehiro, whose address is Sankyo Seisakusho Co., Ltd., Tsuzuki-ku, Ikebe-cho 3290, Yokohama City, Japan 224-0053 (hereinafter as to the "Secured Party").

      WHEREAS, Secured Party has advanced Debtor the total sum principal amount of One Hundred Thousand Dollars ($100,000.00) and Debtor has agreed to repay Secured Party the principal amount of One Hundred Thousand Dollars, plus interest, in accordance with the terms of a certain Promissory Note, of even date, executed concurrently herewith (hereinafter, the "Promissory Note");

      WHEREAS, Debtor recently suffered injuries to his lower limbs on a Japan Airlines Co., Ltd. aircraft, as a result of the actions of various third party tortfeasors (hereinafter, the "Third Party Claim");

      WHEREAS, Debtor possesses an interest in the proceeds of settlement, compromise or judgment from the Third Party Claim against Japan Airlines Co., Ltd., Japan Airlines Co. (Guam), Ltd., their respective insurance companies, their agents, and any other person who contributed to the cause of the Incident (hereinafter, the "Third Party Tortfeasors");

      WHEREAS, Debtor intends and agrees to pursue his Third Party Claim against the Third Party Tortfeasors by filing a claim for the injuries he has suffered and, should the claim not be settled or compromised, by prosecuting his claim in a civil action against the Third Party Tortfeasors within two (2) years of the date upon which Debtor was injured;

      WHEREAS, Debtor intends and agrees to be solely responsible for the payment of all attorney's fees, which he has, or will, incur in the pursuit, and prosecution, of his Third Party Claim; and,

      WHEREAS, Debtor intends and agrees to assign to Secured Party the proceeds of any settlement, compromise or judgment that he receives from the Third Party Claim in an amount equal to the amount Debtor owes Secured Party under the Promissory Note.

      In consideration of the mutual promises contained herein, and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties agree as follows:

      1.    Incorporation of Premises. All Premises set forth above are hereby fully incorporated into this Agreement and shall have the same force and effect as if set forth in full herein.

**Exhibit**

**3**

2. **Grant of Security Interest.** For valuable consideration, and to secure the payment and performance of the Secured Obligations as defined in Paragraph 3, Debtor hereby assigns to Secured Party, and grants to Secured Party, a security interest in the proceeds of any settlement, compromise or judgment from the Third Party Claim, resulting from actions of the Third Party Tortfeasors, as referenced in the Premises above (all of which shall be collectively referred to herein as "Collateral").

3. **Obligations Secured.** This Agreement and the security interest created hereby are given for the purpose of securing the following (collectively, the "Secured Obligations"): All obligations now existing or hereafter arising, direct or indirect, absolute or contingent, due or to become due, of Debtor to Secured Party arising out of or relating to the payment of the indebtedness evidenced by that certain Promissory Note of even date herewith in the principal amount of ONE HUNDRED THOUSAND DOLLARS ($100,000) (the "Promissory Note") executed by Debtor in favor of Secured Party.

4. **Debtor's Representations.** Debtor represents, covenants, warrants and agrees that: (a) Debtor will execute all documents and take such other action as Secured Party deems necessary to create and perfect a security interest in the Collateral; (b) Debtor will, at its sole cost and expense, defend any claims that may be made against the Collateral; (c) Debtor will not, without Secured Party's prior written consent, transfer, sell, encumber, conceal or otherwise dispose of the Collateral or any interest therein; (d) Debtor has full power and authority to own the Collateral and enter into and perform this Agreement; (e) the execution and delivery of this Agreement by Debtor have been duly authorized by all necessary actions of the Debtor; (i) Debtor has, or will have, good and marketable title to all of the Collateral, free and clear of all liens, claims, options, charges, security interests and encumbrances taking priority over the security interest granted hereunder to the Secured Party; (f) As to any of the Collateral hereafter acquired by Debtor, Secured Party will have a valid, perfected security interest in such Collateral upon Debtor acquiring use or possession of same; (g) Debtor shall from time to time execute and deliver to Secured Party such documents as Secured Party may reasonably require to further assure to Secured Party its rights under this Agreement, including as may be necessary or appropriate to perfect, preserve and protect the security interests granted hereunder.

To the extent permitted by applicable law, Debtor hereby authorizes Secured Party to execute and file in the name of Debtor, with or without Debtor's signature, UCC financing statements, continuation statements or other filings not inconsistent with the financing statements executed by Debtor hereunder, which Secured Party in its reasonable discretion may deem necessary or appropriate to perfect, preserve and protect the security interests granted hereunder. So long as Debtor remains obligated under this Agreement or under any Secured Obligations,

Debtor shall permit Secured Party, or its assignee, at Secured Party's expense, to inspect all documents concerning Debtor's claim, legal or otherwise, and to visit any place, including, but not limited to law offices, where the documents concerning the Third Party Claim or Collateral are located, to examine Debtor's books of account and records and legal documents and to discuss Debtor's affairs, finances and accounts and legal status of the Third Party Claim with, and be advised of the same by Debtor's respective officers, agents and attorneys, all at such reasonable times as may be requested by Secured Party. Debtor shall not change its attorneys, with respect to the Third Party Claim, or the location of its legal documents, or change its name or identity in any manner, unless Debtor shall have given at least thirty (30) days prior written notice thereof to Secured Party and shall have taken all action necessary or required by Secured Party to protect and preserve the perfection and validity of the security interest granted hereunder. Debtor agrees and covenants to keep substantially complete and accurate books and records concerning the Collateral, including proceeds thereof, and to permit the Secured Party and their designees upon reasonable notice and during reasonable business hours to enter Debtor's premises, or the premises of Debtor's attorneys, to inspect Debtor's books, records and legal documents and to audit and make copies or extracts from such books, records and documents. Such entry and inspection shall be conducted so as to minimize any interruption to Debtor and Debtor's attorneys' law practice and, upon the request of Debtor, shall be subject to an appropriate non-disclosure agreement. Debtor agrees and covenants to promptly notify the Secured Party of any legal process levied against the Collateral.

5.    Default. There shall be a "default" hereunder upon the occurrence of any of the following "Events of Default":

(a)    Debtor shall fail to make any payment of principal, interest or charges when due pursuant to the Promissory Note or this Agreement and such failure shall not be cured within ten (10) days after receipt of notice from Secured Party; or

(b)    Debtor shall fail to perform, observe or comply with any other covenant, condition or agreement required to be observed or performed by the Debtor pursuant to the Promissory Note or this Agreement and such failure shall not be cured within thirty (30) days after receipt of written notice from Secured Party, or in the event such failure is not reasonably curable within such thirty (30) day period, Debtor shall not be in default so long as it commences curative efforts within such thirty day period and thereafter diligently continues to try to cure such failure; or

(c)    Debtor shall become insolvent or shall admit in writing its inability to meet its debts as they become due, or shall file a voluntary petition in bankruptcy, or make an assignment for the benefit of creditors, or consent to the appointment of a receiver or trustee for all or a substantial part of its properties, or file a petition, answer or other instrument seeking or

acquiescing to the arrangement of Debtor's debts, or other relief under the federal bankruptcy laws or any other applicable law for the relief of debtors of the United States of America or any state or territory thereof; or

(d)    A decree or order of a court having jurisdiction in the premises shall be entered (i) adjudging Debtor to be bankrupt or insolvent, or (ii) appointing a receiver or trustee or assignee in bankruptcy or insolvency of Debtor or Debtor's assets or, (iii) directing the winding up or liquidation of Debtor's affairs; or

(e) Any representation, warranty or covenant made by Debtor in connection with the Promissory Note or this Agreement shall be untrue at any time in any material respect.

(f) The institution of involuntary bankruptcy, insolvency or similar proceedings against the Debtor which are not dismissed within sixty (60) days; or

6.    Secured Party's Remedies Upon Default.    Upon the occurrence of a default hereunder, all obligations secured hereby shall, at Secured Party's option, immediately become due and payable without notice or demand, and Secured Party shall have in any jurisdiction where enforcement hereof is sought, in addition to all other rights and remedies which the Secured Party may have under law or under the terms of the Promissory Note, (i) all rights and remedies of a secured party under the Uniform Commercial Code as enacted in the territory of Guam, and/or (ii) the following rights and remedies, all of which may be exercised with or without further notice to Debtor:  (a) to settle, compromise or release on terms acceptable to Secured Party, in whole or in part, any amounts owing on the Collateral; (b) to enforce payment and prosecute any action or proceeding with respect to any and all of the Collateral; (c) to extend the time of payment, make allowances and adjustments and issue credits in Secured Party's name or in the name of Debtor; (d) to foreclose the liens and security interests created under this Agreement or under any other agreement relating to the Collateral by any available judicial procedure or without judicial process; (e) to enter any premises where any Collateral may be located for the purpose of taking possession of or removing the same; (f) to remove from any premises where the same may be located the Collateral and any and all documents, instruments, files and records, and any receptacles and cabinets containing the same, relating to the Collateral; (g) to receive, open and dispose of all mail addressed to Debtor and notify postal authorities to change the address for delivery thereof to such address as Secured Party may designate.  Debtor agrees to pay all costs and expenses incurred by Secured party in the enforcement of this Agreement, including without limitation reasonable attorneys' fees, whether or not suit is filed thereon.  Secured Party may exercise any of its rights and remedies without demand, advertisement or notice other than as may be required by law or this Agreement.  To the fullest extent permitted by law, Debtor waives notice of acceptance of this Agreement, demand, notice, protest, or other action taken in reliance hereon and all other demands

and notices of any description, except as provided herein.

7. Notices. Any notice required or permitted by law or this Agreement shall be in writing, and shall be deemed to have been duly given if personally delivered, upon delivery, or if sent by telex, electronic reproduction, facsimile or similar means, upon sending, or, if mailed, forty-eight (48) hours after being posted by United States certified or registered mail, first-class postage prepaid, to the parties or their assignees at the addresses set forth above (or at such other address as shall be given in writing by either party to the other).

8. Miscellaneous. This Agreement expresses the entire understanding of the parties and may not be altered or amended except with the written consent of each of the parties. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns. All obligations of Debtor shall be joint and several. All of Secured Party's rights and remedies hereunder are cumulative and not exclusive, and are in addition to all rights and remedies provided by law or under any other agreement between Debtor and Secured Party, or otherwise. Where the context permits, the plural term shall include the singular, and vice versa. This Security Agreement shall be governed by the laws of the Territory of Guam. The paragraph headings are inserted for convenience only.

9. No Obligations Undertaken. Nothing contained in this Agreement shall relieve Debtor of, or impose on Secured Party, any obligation or liability for, under or in respect of the Collateral, and Debtor shall indemnify and hold Secured Party harmless from and against all such obligations and liabilities and any claims relating thereto.

10. Further Assurances. Debtor agrees that at any time and from time to time upon the written request of Secured Party, Debtor will execute and deliver such further documents, including but not limited to financing statements or other filings appropriate for perfecting Secured Party's rights hereunder, in form reasonably satisfactory to counsel for Secured Party and Debtor, and will take or cause to be taken such further acts as Secured Party may reasonably request in order to effect the purposes of this Agreement and perfect or continue the perfection of the security interest in the Collateral granted to Secured Party hereunder.

11. Waiver, Amendment or Modification. No waiver, amendment or modification of any provision hereof or of any right or remedy hereunder shall be effective unless in writing and signed by the party against whom such waiver, amendment or modification is sought to be enforced. No failure by Secured Party to exercise, and no delay by Secured Party in exercising, any right, power or remedy granted hereunder shall operate as a waiver of any such right, power or remedy. A waiver of any right or remedy by Secured Party on any one occasion shall not be construed as a bar to or waiver of any right or remedy on any future occasion.

12. <u>Severability</u>. Every provision of this Agreement is intended to be severable. If any term or provision is declared to be illegal, invalid or unenforceable for any reason whatsoever by a court of competent jurisdiction, such illegality, invalidity or unenforceability shall not affect the balance of the terms and provisions, which terms and provisions shall remain binding and enforceable.

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first above written.

**DEBTOR:**

**ROBERT J. DEL ROSARIO**

**SECURED PARTY:**

**HAYAO SUEHIRO**

GUAM                  )
                       ) ss:
CITY OF HAGÅTÑA    )

On this 18th day of February, 2003, before me a Notary Public in and for Guam, personally appeared ROBERT J. DEL ROSARIO, known to me to be the person whose name is subscribed to in the foregoing instrument and acknowledged to me that he executed the same as his own free act and deed for the uses and purposes therein set forth.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

_____
Notary Public
NORMALOU G. MANIBUSAN
NOTARY PUBLIC
In and for Guam, U.S.A.
My Commission Expires: Aug. 8, 2004
P.O. Box 20248, GMF, Guam 96921

) SEAL (

GUAM                  )
                       ) ss:
CITY OF HAGÅTÑA    )

On this 14th day of February, 2003, before me a Notary Public in and for Guam, personally appeared HAYAO SUEHIRO, known to me to be the person whose name is subscribed to in the foregoing instrument and acknowledged to me that he executed the same as his own free act and deed for the uses and purposes therein set forth.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

_____
Notary Public
NORMALOU G. MANIBUSAN
NOTARY PUBLIC
In and for Guam, U.S.A.
My Commission Expires: Aug. 8, 2004
P.O. Box 20248, GMF, Guam 96921

) SEAL (

# UNIFORM COMMERCIAL CODE ∘ FINANCING STATEMENT

## IMPORTANT—Read Instructions on back before filling out form
### This FINANCING STATEMENT is presented for filing pursuant to the Guam Uniform Commercial Code.

| 1. DEBTOR (LAST NAME FIRST—IF AN INDIVIDUAL) | | | 1A. SOC. SEC. OR FEDERAL TAX NO. | |
|---|---|---|---|---|
| DEL ROSARIO, ROBERT | | | 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 | |
| 1B. MAILING ADDRESS | 1C. CITY, STATE/TERRITORY | | | 1D. ZIP CODE |
| 110 CALAMENDO LOOP, LIGUAN TERRACE | DEDEDO, GUAM | | | 96929 |
| 2. ADDITIONAL DEBTOR (IF ANY) (LAST NAME FIRST—IF AN INDIVIDUAL) | | | 2A. SOC. SEC. OR FEDERAL TAX NO. | |
| | | | | |
| 2B. MAILING ADDRESS | 2C. CITY, STATE/TERRITORY | | | 2D. ZIP CODE |
| | | | | |
| 3. DEBTOR'S TRADE NAMES OR STYLES (IF ANY) | | | 3A. FEDERAL TAX NUMBER | |
| | | | | |

| 4. SECURED PARTY | 4A. BANK TRANSIT AND ABA NO. |
|---|---|
| HAYAO SUEHIRO | |
| MAILING ADDRESS Sankyo Seisakusho Co., Ltd., Ikebe Cho 3290 | |
| CITY Yokohama-shi    STATE/TERRITORY Yokohama, Japan    ZIP CODE 224-0053 | |

| 5. ASSIGNEE OF SECURED PARTY (IF ANY) NAME | 5A. SOC. SEC. NO, FEDERAL TAX NO. OR BANK TRANSIT AND A.B.A. NO. |
|---|---|
| MAILING ADDRESS | |
| CITY    STATE/TERRITORY    ZIP CODE | |

6. This FINANCING STATEMENT covers the following types or items of property (include description of real property on which located and owne of record when required by instruction 4).

The proceeds of settlement, compromise or judgment from Debtor's claims and damages for bodily injury against Japan Airlines Co., Ltd., Japan Airlines Co. (Guam), Ltd., their respective insurance companies, their agents, and any other person who contributed to the cause of Debtor's bodily injury to his lower limbs on a Japan Airlines Co., Ltd. aircraft. See, Security Agreement, attached hereto as Exhibit "A".

| CHECK IF APPLICABLE [X] | 7A. ☐ PRODUCTS OF COLLATERAL ARE ALSO COVERED | 7B. DEBTOR(S) SIGNATURE NOT REQUIRED IN ACCORDANCE WITH INSTRUCTION 5(a) ITEM: ☐ (1) ☐ (2) ☐ (3) ☐ (4) |
|---|---|---|
| CHECK IF APPLICABLE [X] | ☐ DEBTOR IS A "TRANSMITTING UTILITY" IN ACCORDANCE WITH UCC SEC. 9105 (1) (n) | |

| | DATE: | C O D E | THIS SPACE FOR USE OF FILING OFFICER (DATE, TIME, FILE NO. AND FILING OFFICER) |
|---|---|---|---|
| See, Debtor's signature on Security Agreement, Ex. "A". | | | FILED AGANA, GUAM |
| SIGNATURE(S) OF DEBTOR(S) | | | |
| Robert J. Del Rosario | | 1 | |
| TYPE OR PRINT NAME(S) OF DEBTOR(S) | | 2 | ~~Illegible B. Illegible~~ |
| *Michael D. Flynn, Jr., Attorney* | | 3 | Commissioner |
| SIGNATURE(S) OF SECURED PARTY(IES) Michael D. Flynn, Jr., Attorney for Hayao Suehiro | | 4 | Banking & Insurance |
| Hayao Suehiro | | 5 | FILE NO. 27104 |
| TYPE OR PRINT NAME(S) OF SECURED PARTY(IES) | | 6 | TIME 3:10 pm |
| Return copy to: | | 7 | DATE APR 13 2007 |
| MAHER ∘ YANZA ∘ FLYNN ∘ TIMBLIN, LLP 115 Hesler Place, Ground Floor Governor Joseph Flores Building Hagatna, Guam 96910-5004 | **Exhibit** | 8 9 0 | |